IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

CHESAPEAKE APPALACHIA LLC,

    Plaintiff,

v.                                CIVIL ACTION NO. 2:11-cv-00207

MOUNTAIN V OIL & GAS INC., et al.

    Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant Mountain V Oil & Gas, Inc.'s motion to bifurcate the discovery and trial phases of this case with respect to punitive damages [Docket 26] and motion for extension to file expert witness disclosures [Docket 63.] For the reasons that follow, the Court **GRANTS** motion to bifurcate the discovery and trial phases of this case with respect to punitive damages [Docket 26] and **DENIES AS MOOT** Defendant's motion for extension to file expert witness disclosures.[1] [Docket 63.]

*I. BACKGROUND*

This case concerns a dispute over mineral rights. Plaintiff, an Oklahoma-based oil and gas company, claims that Defendant Mountain V Oil & Gas, Inc., a West Virginia oil and gas company, wrongfully drilled a gas well on, and has extracted natural gas from, an 82-acre tract of land in

---

[1] This motion is mooted by the Court's January 5 and 23, 2012 and March 14, 2012, Scheduling Orders.

Lincoln County, West Virginia. Plaintiff alleges that it owns the mineral rights to this land. (Docket 71 at 1-3.) Plaintiff further alleges that the deed to its mineral rights was recorded in Cabell County, West Virginia in 1860. (*Id.* at 2.) Plaintiff states that at the time the deed was recorded, "Lincoln County was part of Cabell County, West Virginia." (*Id.*) Plaintiff alleges willful trespass, slander of title, and conversion claims, among others. It seeks compensatory and punitive damages, ejectment, an accounting, injunctive, declaratory and other relief. (*Id*. at 8.)

Defendant admits it leased the oil and gas estate from the owner of the mineral rights connected with the Lincoln County tract of land. (Docket 9 at 3.) Defendant states that a copy of the lease was recorded in the Lincoln County Clerk's Office. (*Id.*) Defendant also freely admits that it drilled a gas well on the tract and has extracted gas from the well. (*Id.*) Defendant claims that as the oil and gas lessee, it at all times had a bona fide right to drill the gas well and extract gas from it and any injury Plaintiff may have suffered results from Plaintiff's failure to have properly recorded its deed in Lincoln County as required under West Virginia Code § 40-1-9. (*Id.*) Defendant states that it hired a title abstractor to inspect Lincoln County records and lawyers to conduct a title examination. (Docket 26 at 1-2.) Defendant states that the title opinion asserted that the lessor of the mineral rights owned the oil and gas rights to the property. (*Id.*) It was only after Defendant obtained the title opinion that Defendant constructed the gas well and extracted gas. (*Id.*) Defendant argues that it was Plaintiff's failure to record properly its alleged interests in the Lincoln County tract that prevented Defendant from ascertaining Plaintiff's mineral rights claim. (*Id.*)

## II. APPLICABLE LAW

Rule 42 of the Federal Rules of Civil Procedure provides:

    (a)    Consolidation. If actions before the court involve a common question of law or fact, the court may:

        (1) join for hearing or trial any or all matters at issue in the actions;
        (2) consolidate the actions; or
        (3) issue any other orders to avoid unnecessary cost or delay.

    (b)    Separate Trials. For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third–party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

### III. DISCUSSION

*A.    The Parties' Arguments*

Defendant argues that bifurcation of the punitive damages phase of the trial from the liability phase is necessary for several reasons. Defendant claims that absent bifurcation it will suffer prejudice in two distinct respects. First, it claims that evidence of Defendant's wealth "should not be used as a weapon against it to confuse the jury at the liability stage of the trial." (Docket 26 at 7.) It argues that until Plaintiff has set forth a *prima facie* case on the issue of punitive damages, evidence of Defendant's wealth is not relevant. (*Id.*) Second, Defendant states that it will also suffer prejudice because Plaintiff is a business competitor and, in the course of discovery, has sought disclosure of Defendant's proprietary and financial information (*e.g.* gross and net profits from 2000 to the present; business profits and losses; costs; business forecasts and budget projections; and amount and structure of Defendant's capitalization). (*Id*. at 3.) Defendant argues that evidence of Defendant's financial wealth is only admissible in connection with Plaintiff's punitive damages claim, and Plaintiff is "highly unlikely" to prevail on an intentional trespass claim, the claim on which the punitive damage claim depends. (*Id.* at 5-6.) Under these circumstances, it is, according

3

to Defendant, unfair to permit Plaintiff, a business competitor, to invade Defendant's private proprietary financial information prior to a ruling that Plaintiff has survived summary judgment on the issue. (Docket 30.)  Defendant also argues that bifurcation aids appellate review because it "permits the reviewing court to more easily evaluate whether passion and prejudice influenced the jury's findings on liability and compensatory damages." (Docket 26 at 5.) Finally, Defendant contends that bifurcation will not be costly and will not require two trials. (Docket 30 at 4.) It argues that if and when Plaintiff survives summary judgment on the issue of punitive damages, Defendant can "immediately produce two years worth of audited financial statements and have its previously retained expert review these statements and prepare a report." (*Id.*) Thereafter, depositions on the issue can be "undertaken in short order prior to trial." (*Id.*)  At trial, no evidence of Defendant's wealth will be heard unless and until the jury decides "whether it believes that the trespass, if any, was sufficiently willful to entitle [Plaintiff] to an award of punitive damages." (*Id.*) In the event the jury makes such a finding, then the parties "will immediately present additional evidence to the same jury regarding punitive damages, including [Defendant's] wealth." (*Id.*)

Plaintiff responds that its interest was properly recorded in 1860 in Cabell County, the county that then embraced the disputed mineral estate. (Docket 28 at 1.)  In a footnote, Plaintiff states that the date of recording the deed pre-dated West Virginia's statehood and the West Virginia statutes on which Defendant relies, namely, West Virginia Code §§ 40-1-9, 40-1-10. (*Id.* at 1- 2 n.1.) Plaintiff cites the West Virginia Constitution for the proposition that "all interests in land derived from the Commonwealth of Virginia prior to the formation of West Virginia shall remain valid in West Virginia subsequent to its formation." (*Id.*) Plaintiff faults Defendant for conducting an inadequate title search. (*Id.* at 2.)  It claims that Defendant's intrusion onto Plaintiff's mineral rights

4

was a "knowing, willful, wanton, reckless, and intentional invasion" of Plaintiff's property rights and, thus, the intentional trespass and punitive damages claims are intertwined. (*Id.* at 3.) Plaintiff argues that bifurcation will only increase litigation costs because there will have to be two discovery phases and two trials concerning overlapping evidence on Defendant's willfulness. (*Id.*) Plaintiff also argues that any potential prejudice to Defendant by admitting evidence of its wealth in the trial will be cured by appropriate jury instructions and that the parties' protective order eliminates any misuse by Plaintiff of Defendant's financial information. (*Id.* at 4.)

    *B.*    *Analysis*

The Court is persuaded that Defendant will suffer unfair prejudice if bifurcation of the punitive damages phase of the trial is not permitted. Based on the record as it now stands, it appears that Plaintiff does not dispute that Defendant hired professionals to conduct a title examination of the contested mineral estate and that the title opinion was that the oil and gas lessor owned the mineral estate. While Plaintiff complains that its alleged mineral rights deed was recorded in Cabell County prior to West Virginia's statehood and, thus, necessarily prior to the passage of West Virginia Code § 40-1-9, Plaintiff offers no authority for the proposition that it is exempted from recording its mineral estate deed as required by § 40-1-9.[2] The Court notes Plaintiff relies on Article 13 of the West Virginia Constitution for the proposition that Plaintiff's interest in the mineral estate

---

[2] Section 40-1-10 provides:

> Every such contract, every deed conveying any such estate or term, and every deed of gift, or trust deed or mortgage, conveying real estate shall be void, as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, trust deed or mortgage may be.

is legally valid. The Court does not need to decide at this juncture whether that argument has merit because, even assuming Plaintiff had a valid claim to the mineral estate, the issue here—at least as far as punitive damages are concerned—is whether Defendant willfully disregarded Plaintiff's property interest. Relegated to a footnote is Plaintiff's assertion that Defendant's title opinion only covered a period from April 15, 1982 to January 28, 2005, and that the opinion could not be certified prior to 1909. Absent from Plaintiff's argument is any assertion or evidence that all would-be purchasers of real or mineral estate interests in Lincoln County, West Virginia have a legal duty to conduct title searches in Cabell County. That may well be the case, but Plaintiff has not satisfied the Court at this juncture that it is. Consequently, the Court agrees with Defendant that, where Defendant hired lawyers to conduct a title examination and obtained a title opinion that stated that the mineral lessee owned the mineral rights, Plaintiff's claim that Defendant willfully trespassed on Plaintiff's mineral estate appears doubtful.

Additionally, Defendant offers a reasonable argument that a bifurcated litigation plan will not result in excessive costs or be inconvenient. Defendant proposes that in the event that Plaintiff survived summary judgment on the intentional trespass and punitive damages claims, discovery on Defendant's wealth will be conducted in short order prior to trial and that evidence of Defendant's wealth will be introduced only if and when a jury finds Defendant's trespass was sufficiently willful to merit punitive damages. This is a sensible plan which the Court will may revisit with the parties following resolution of dispositive motions.

Finally, one further item informs the Court's decision. Defendant is alleged to be a family-owned business who engages in direct business competition with Plaintiff. Plaintiff has in the course of discovery sought substantial and sensitive proprietary business records from Defendant

including, among other items, profit and loss statements and business forecast records. As United States Magistrate Judge Mary E. Stanley wisely observed when denying Plaintiff's requests for discovery of Defendant's financial records, the oil and gas business is highly competitive. (*See* Docket 52 at 6.) The Court agrees with Magistrate Judge Stanley's conclusion that it is premature to permit discovery of "extensive proprietary information and documents at a point in this litigation when it is not clear that the claim for punitive damages is viable." (*Id.*)

### IV. CONCLUSION

Accordingly, for the foregoing reasons, the Court **GRANTS** Defendant's motion to bifurcate the discovery and trial phases of this case with respect to punitive damages [Docket 26.] The Court also **DENIES AS MOOT** Defendant's motion for extension to file expert witness disclosures. [Docket 63.]

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 13, 2012

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE